Case No. 16-5355 Owner-Operator Independent Drivers Association, Inc. et al. Appellants v. United States Department of Transportation et al. Ms. Mayers for the appellants, Ms. Lopez for the appellees. Good morning. May it please the court, my name is Joyce Mayers. I represent the plaintiff's appellants. I'd like to reserve two minutes of my time for rebuttal. Plaintiffs challenge the district court's dismissal of plaintiff's claims for lack of standing. The district court misread the Supreme Court's decision in Spokio v. Robbins and this court's decision in Hancock v. Urban Outfitters as having rejected standing based upon a claim for violation of statutory rights without an allegation of harm in addition to the invasion of concrete interest created by statute. The district court failed to consider the statutes that are involved here and the intention of Congress in 49 U.S.C. 31106 and 31150 to identify and protect plaintiff's concrete interest in the accuracy of an individual driver's safety performance records. The harm that such inaccurate records pose to a driver's professional reputation for safety is the kind of harm that has traditionally provided the basis for suit in the Anglo-American system. An erroneous record of drunk driving or hours of service violation in the trucking industry cannot be trivialized as comparable to a wrong zip code. What do you do with our decision in, I mean, quite apart from the Supreme Court's case, in Hancock, we said plaintiffs must allege some concrete interest that is de facto real and actually exists. Now, I get your point that this information the agency has here is more serious than zip code information, but still this case holds that you have to show something more than that there's inaccurate information in the government file. Well, I mean, that may be why your individual drivers have standing because their information has been released, whereas the association doesn't. Well, the association, just to answer your last question, the association has tens of thousands of member truck drivers who are on the road daily being cited for all kinds of safety violations. I get that point, but in Hancock, interpreting the Supreme Court's opinion in Scopio, we said quite clearly you have to show some de facto injury. And what is it here? The de facto injury is the harm to a professional driver's reputation for safety in the trucking industry. But how can it be harmed if it isn't released? Because it is effectively released. First of all. What does that mean, effectively released? Okay. Let me ask you. Let's get it this way for a minute. Okay. You have three individuals here, right? We have five individuals here. Five. Excuse me. Yeah. Thank you. Whose information was released. I'm just speaking for myself. It seems to me they have standing. The information in the government's, this is the de facto injury that the Supreme Court and we were looking for. They were injured. But that's not true, is it? Or why is that true of all the drivers whose information has not been released? Okay. Just considering the MCMIS database and the information that's contained in the MCMIS database. First of all, there's an immediate threat of injury because all of those records are available to be disseminated. All the individual records are available to be disseminated. It's not just the prescreening employment program through which motor carriers can gain access to this information. It's FOIA. But in addition to that. Well, but you don't, let me just talk about FOIA for a minute. I didn't see, maybe I'm wrong about this, but I didn't see FOIA mentioned in your briefs until the reply brief. Is that true? Until the reply brief. Until your reply brief. The government consistently argued the availability of these records in FOIA from the earliest. No, but you didn't assert it as a potential harm until your reply brief. We didn't specifically assert it. But what we did assert is that these records in MCMIS are available for a whole array of uses by the agency with downstream impact on these, immediate downstream impact on these drivers. The information in MCMIS is routinely used by the agency in all of its various rating systems, both for drivers and for motor carriers. But the information, I'm just, I'm trying to focus in on how you articulate the harm to the drivers whose information has not been released. I'm sorry, I didn't hear the last part of your question. I'm sorry, I'm trying to get you to focus in on, to articulate what is the de facto harm to the drivers whose information has not been released. And you say, well, it's the risk that it will be released, right? It's the potential, correct? It's, well, for two, I want you to, let me first say one thing. Yeah. For two of the drivers, the information, in fact, was released to the potential motor carriers. Yeah, that's why I said it. In my view, they have standing. I'm moving beyond those drivers to all of the other drivers who you say have standing to challenge the failure of the agency to maintain the accuracy of the information in its system, right? I mean, maybe they can get damages, but you're seeking injunctive and declaratory relief also, and you have to have standing for that, correct? Correct. Okay. So that's what I'm focusing on. Either for the drivers whose information was released or for the drivers who weren't, where is the de facto injury that flows from information that hasn't been released, especially since, as I understand this, I don't think, am I right that for the future, this incomplete data is not even available anymore through P, what do you call it, pre-screening. It's available for three years electronically through the pre-employment screening program. But for the future, the system will be updated to show the results, correct? So there won't be this kind of inaccurate information anymore. Okay. There's two parts of that question. One, the information is available not just through the pre-screening employment program. It's also available through FOIA. But it's also available, it also has an impact on reputation because of all the various rating systems. But why? You mean potentially it could be. Okay. But it isn't now, correct? It's in there, and let's assume you're right that it's inaccurate. Until its release, you really have not answered my question. I'm trying to get, trying to understand why the drivers are harmed by the presence of inaccurate information given our decision in Hancock, which says you have to have something more than the information in the data system, inaccurate information. Okay. In Hancock, as I read Hancock, in Hancock, this court found that the harm that was alleged was related to zip codes. That was the specific example in Spokio that the court said, we can't even conceive of how a wrong zip code can cause any kind of harm. And as I read the Hancock decision, the decision there endorsed the traditional formulation of injury in fact with respect to the threat of injury as a result of a concrete interest identified by statute. You just think it's a zip code case, right? Zip codes can't hurt anybody. In Hancock. Yeah, but that's, the court says, court, it says plaintiffs must allege some concrete interest that is de facto and real. Yes, and the concrete interest here is the accuracy of a driver's safety performance record, a record that follows the driver throughout his professional career. But don't we learn from Spokio that disclosure is the critical element here? In Spokio. That there's a difference between inaccurate information that has been disclosed and inaccurate information that has not been disclosed. There's a legally significant distinction. Isn't that the big learning from Spokio? In Spokio, there, well, under the Fair Credit Reporting Act, one of the elements of injury under the Fair Credit Reporting Act is, in fact, disclosure. What we're saying here is that the statutes that are involved identify a concrete interest in the accuracy of information maintained in the system. Regardless of disclosure. But, again, under the traditional formulation of injury in fact, the threat of injury is just as palpable as the actual accomplished harm. So disclosure makes no difference. In your argument, disclosure is not legally significant. Whether it's disclosed or not is not important. Not in the absolute terms that Your Honor is stating. We're saying that the fact that the record exists in the system, and that's a proven fact, that's an established fact, that the threat that that information may be disclosed, whether it's directly to a motor carrier, which would be the most injurious situation, or whether it is simply released for use in all these various rating systems, which can ultimately have an effect on a driver's employability. Can I ask about the two for whom it has been disclosed? Judge Tatel thinks they have standing. I'm not certain they do. Help me understand this. Have they been hurt in their employment? This is Maurer and Weaver? Yes. Their information has been disclosed, but did they not get a job because of that? There isn't information in the record. Why? Why isn't there? That's a very simple matter. That's a pleading matter, isn't it? I guess your point is you want to establish standing on a far broader basis. Correct. Because it seems to me the easy way to do this case. But, Your Honor, can you excuse me? Excuse me. It works better this way. I'm sorry. I know it's frustrating, but it helps me to think. It seems to me a simpler way for you to broach your case. I'm not advising you how to bring your case, but it's instructive here. If Maurer and Weaver had actually been fired from their jobs or had been unable to get a job because of this disclosure, boy, there you've got standing. You've got an economic interest that's harmed. You haven't alleged that here. This is becoming more clear to me. I guess that's because you don't think you need to have that concrete of harm. You're saying just the risk that some future employer might ask for this information and find it on their record and may affect the judgment of the employer, that's the harm alone. Is that right? I'm just trying to understand. To answer your immediate question, yes, because it has an immediate effect on the driver's reputation. In the particular circumstances of the drivers that are involved here, Tell me about these two. A driver would not necessarily know the reason why he was denied a job. The information might have been released. Were these two denied jobs? Well, one of them applied for four jobs, and the information was released four different times. I do not know whether in all four instances he was denied a job. I thought the statutory scheme provided for notice to the individual if the information, in fact, was used as part of the employment process. Isn't that the way it works? Again, I think that's the Fair Credit Reporting Act, but the record in this case, the only requirement that a driver be advised of whether or not the released information resulted in an adverse impact would be in the consent form that is required under the prescreening employment program. Right, under that form. Again, it's unclear that motor carriers, in fact, follow through with that kind of thing because it's a rolling process. That's a different issue, but if they do follow through on that kind of thing, the Joint Appendix at 412, I think, if I've got the page right, has the form. Typically, an individual, if things are working as the way they should, the individual would know, and then that would be a concreteness that we don't know about now because these two individuals haven't made that allegation. In that circumstance, it would make logical sense, if that plaintiff were filing a complaint for damages related to the consent form or that kind of thing, that all of those allegations would appear in a complaint. Right. Can I ask you? No, you go ahead. You keep going. I just want to ask you a question about the way you conceive of the plaintiffs here. Even if you think that it's not necessary that the information had been disclosed with respect to a particular individual, I take it that your view is at least that your case is better for the two for whom the information, in fact, was disclosed. The information is more complete, for sure. Okay. If I'm looking at the potential groups of plaintiffs, I see three. You have five that you've pointed to. Two of whom for which the information was disclosed, three of whom we don't have any allegations about that, and then there's everybody else in the association. Am I right in understanding the case to know that there's no difference for our purposes between the three and everybody else? Right. The real distinction is between the two on one hand and the three and everybody else on the other hand. You can look at it that way. I would argue that all five have the same interest in going forward as professional truck drivers, that everybody has an interest in the federal regulatory authorities having an appropriate policy to ensure that the records that they maintain in their systems are accurate. Just to pursue Judge Srinivasan's effort to properly classify these issues, yes, the distinction is between the two who allege that information was released and everybody else, including the three who don't have those allegations. But there's a second distinction, isn't there? And that is between the relief they're seeking. So the two whose information was released, they're seeking damages, correctly, right? Under the Fair Credit Reporting Act. And injunctive relief. And you have to have standing for both of those. And with respect to the latter, they're in exactly the same position as the thousands of other drivers, right? That's correct. Okay, great. All right. Okay. Thank you. Thank you. We'll hear from the government, okay? May it please the Court, Caroline Lopez on behalf of the government. I just wanted to briefly start by talking about our first argument on mootness, which is that the bulk of plaintiff's claims here, which are for prospective relief, are moot for two reasons. First, they're seeking to stop the transmission of old violations that have already cycled out of PSP and are no longer available, as we've been discussing today. And second, because they're seeking to change a rule that simply doesn't exist anymore because it's been replaced. Mootness doesn't help you with the two whose information has been released, right? With respect to the two whose information has been released, mootness does still help with all of their claims for prospective relief. But not for damages. But you also argue they don't have standing, right? That's correct. Is there a reason why you're pushing mootness over standing? Is there a reason why you started with mootness? We think that for the bulk of plaintiff's claims, which are all for prospective relief, it's important both that they have no individual risk that's currently occurring and that. But is there a reason why you started out? You could make the same argument about standing for that, right? Your argument is there's no injury. That's right. Do you think the standing argument is harder? I think that this court has only decided a few cases post-Spokio and that within the boundaries of this case because of 2014, we agree that in Hancock this court made clear that the type of claims that plaintiffs are seeking to bring here, which is just at heart, that a pure procedural injury divorced from any concrete or real risk of harm in the real world. Under Hancock, should we view the two whose information has been disclosed differently than the three whose information has not been disclosed under Hancock? Under Hancock, for purposes of FCRA, the folks who've had their information disseminated are to be treated differently for purposes of the claims for prospective relief. Which means that they have standing, you're saying? As we argued in our brief, we believe that they've waived those claims by not bringing them before the district court even though Spokio had been decided. We don't agree with that, though. Do you think you agree they do have standing? We do concede that those two plaintiffs have standing under the very narrow specific factual dictates of this case, though we would ask that to the degree that this court does not believe those claims have been waived for remands because the government has other full defenses on FCRA. Can I test you on a theoretical matter on that? So you concede standing on those, but then you make the argument with respect to prospective relief, even with respect to those two individuals, that they don't have concrete harm because they could have, if they in fact suffered the kind of concrete harm that we'd be worried about under your conception of the case, then there would have been a notice given and they could have alleged that. That's equally true for the claims for retrospective relief, too. The reason for the difference in our perspective on standing for purposes of the FCRA damages claims and for purposes of the prospective relief under the APA has to do with the specific statutes that are at issue. And what Spokio teaches us is that there's always a two-part test in every case. The first question is the question of whether the particular statutes at issue in the litigation, so the prospective relief isn't under FCRA, it's under two DOT-specific statutes, Section 31106 and Section 31150. So at Step 1 under Spokio, the court needs to look at whether those particular statutes, in those particular statutes Congress intended for a procedural violation to confer a concrete interest. And then Step 2 under the Spokio test is always, even if the answer to that Step 1 is yes, at Step 2 the court always needs to look at whether on the facts of the particular record these plaintiffs have alleged the degree of risk of harm that was recognized in that particular statute. And here, just to talk about, I'm going to take each of those in turn for the prospective relief. So under the first Spokio prong, the type of language, the plain text of the DOT-specific statutes don't contain the type of individual focusing language that, for example, the Supreme Court in Havens Realty has found. Right. So suppose I agree with you on that, just assume for purposes of argument. I'm not saying that I do, but assume that we do. Then go to the retrospective part and why it is that your argument as to why there's not concreteness enough for I get that it's under FCRA, and I get that Spokio says what it says. And then the question is then why do you come to the point that you can't make the same argument, which is to say there's an opportunity to make a more concreteness determination under FCRA, when it's through the lens of this particular regime because under the PSP you'd actually get notice. So under the DOT-specific statutes, you need to show that there's an actual, tangible, adverse consequence as the result of the dissemination of the information, whereas under FCRA the Supreme Court has said that because of the specific way the statutory damages provision works in FCRA, so in FCRA it says you can either get actual damages or damages of not less than $100 or more than $1,000. And so that type of cause of action for those types of damages, which is an unusual type of cause of action, isn't part of the APA, isn't part of the Privacy Act. So you think that what the Supreme Court said in Spokio applies across the board to FCRA claims, even if in a particular case for this particular class of plaintiffs they could have made a more concrete claim of injury because in this case you have both FCRA and you have the PSP in operation. So in theory, they could have gotten the kind of notice of concrete injury that would have substantiated their claims for prospective relief, no less than their claims for retrospective relief. But you think that because they're raising a FCRA claim, the PSP part of it just drops out. And you're looking at it just as a FCRA claim and then across the board under FCRA, as long as you've made out a claim under the statute, you've got standing, regardless of concreteness of injury. Under FCRA, what the Supreme Court said in Spokio is that particular statutory damages provision, at least where information has been actually disseminated into the real world, because that's that degree of risk prong, that those plaintiffs can make out FCRA statutory damages claims. By no means does Spokio revolutionize the way standing works in the ordinary run-of-the-mill statutes. And all of plaintiffs' claims for prospective relief are under these types of ordinary run-of-the-mill statutes that just don't contain, that notably do not contain that type of specialized cause of action. I have one question about FOIA. No, go ahead. My question about FOIA is this. So FOIA, there was no mention of FOIA in the opening brief, and so I assume that's the reason that the government, as far as I could tell, didn't respond to FOIA. So can you give us your response on FOIA? And in doing so, can you also take account of the fact that on page 6 of your brief, you say that the 2010 notice, which we know that is explained at PSP, would make this data rapidly available as an alternative to requiring them to submit a FOIA request. So the possibility of FOIA is actually in the ether, as your brief itself contemplates. Yes. Given that, can you just give us your response on FOIA? Absolutely. So, again, we think the FOIA issue is waived, but putting that aside, we think that this new FOIA theory doesn't survive under the Supreme Court's decision in Clapper or this Court's recent decision in Attias, which is that where you're talking about the risk of future injury. So nobody here has ever alleged that, in fact, their information was disseminated through FOIA. So this is all, we're all looking at future or potential injury. That that injury has to be certainly impending, and it can't have an attenuated chain of causation or be speculative. And here it's highly speculative that an employer, rather than would choose to bypass the expeditious PSP system and go through the FOIA route instead, which takes more time, significantly more time, and is subject to exemptions on a case-by-case basis, and that that employer would also get consent from a particular driver to submit a FOIA request because this information involves personally identifying the driver. So what about the drivers for whom the records through PSP aren't available any longer because you're past the three years? So as to them, all the employer has left, they don't have PSP anymore. So what the employer has left is the potentiality of using FOIA. So I just want to clarify what the employer, PSP always contains the most recent three years information about any particular driver. So an employer looking at a driver pulling up a report in PSP that says that their driver's license is clean for the last three years, why would that employer then decide to look farther? And plaintiffs have never articulated any real reason why that would happen. Okay. Thank you. Did Mrs. Mayer have any time left? Okay, you can take a minute if you'd like it. I'm sorry? You can have a minute. Okay. Just on the questions related to FOIA, the government has consistently argued that PSP was only ever an alternative to FOIA and that a driver's complete record, everything that a driver's ever been cited for that is contained in MCMIS is available through FOIA indefinitely. That has been their argument since the beginning and it has been their consistent defense on the attack specifically against PSP in the First Circuit case of Flock versus the Department of Transportation. They made the same arguments, by the way, to the Supreme Court. Thank you. Okay, thank you. Both cases submitted.
judges: Tatel, Griffith, Srinivasan